**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **LAUREN DE CAMARA, SASHA** | : | **CIVIL ACTION** |
| **KACHRU, and ESÉNIA BAÑUELOS,** | : | |
| | : | |
| **v.** | : | **NO. 25-2287** |
| | : | |
| **BRYN MAWR COLLEGE, THE** | : | |
| **BOARD OF TRUSTEES OF BRYN** | : | |
| **MAWR COLLEGE** | : | |

## MEMORANDUM

**KEARNEY, J.**                                                                                    **December 8, 2025**

College students seeking accommodations for an array of alleged disabilities on campus and in the classroom sue their college seeking damages and injunctive relief under the Americans with Disabilities Act and under a variety of contract theories. We allowed three students to proceed on their individual claims into discovery ten weeks ago. The three students along with two others now timely return with a third attempt to plead disabilities claims and breach of contract theories for several differing concerns some of which overlap with others. We studied the college's several challenges to these proposed detailed amendments. The students pleaded individualized concerns, steps to remedy their concerns, and varying remedies. We need to carefully parse through each student's concern. Our scrutiny leads us to agree with some of the college's challenges and not others. Four students have now demonstrated standing and pleaded facts in support of new claims but none can proceed in obtaining contract damages for emotional distress. We deny leave on several other disabilities and contract claims.

I.      **Background**

Six current and former Bryn Mawr College students sued the College and its Trustees approximately seven months ago hoping to change the College's policies and practices on accommodations for certain disabilities and to recover damages under breach of contract and tort theories.[1] We dismissed several claims in an amended Complaint on September 26, 2025 with leave to amend.[2] The parties are proceeding in discovery leading to a date-certain April 20, 2026 trial. Five of the current and former students—Lauren De Camara, Hope Richards-Cordell, Kyra Kuelgen, Sasha Kachru, and Esénia Bañuelos—now seek leave to file a second amended Complaint.[3]

Their third attempt to plead claims during discovery include:

•       The Students identifying portions of the College's website and handbook they believe support their breach of contract claims;[4]

•       Former-Student De Camara claiming the College did not address her severe nut allergy which did not allow her to eat at the College's cafeteria and did not provide an on-campus psychiatrist;[5]

•       Former-Student Richards-Cordell claiming they "would gladly return" to the College if it "satisfactorily addressed" dietary issues;[6]

•       Student Kuelgen claiming she continues to have pain from walking to classes and "suffer[s] from the lack of an automated means of transportation on campus";[7]

•       The Students amending several fact allegations;[8] and

•       The Students removing allegations about former-Student Aoki.[9]

The Students also continue to plead Jane Doe allegations and a separate "Class Claim" count we struck on September 26, 2025—and added a new "Class Claim" count—and did not

allege facts in support of their request for contract damages compensating them for mental anguish.[10]

## II.    Analysis

The College opposes the Students' third try to plead new claims.[11] It argues the proposed amendments are futile.[12] The College also asks us to strike portions of the Students' proposed second amended Complaint which do not comply with our September 26, 2025 Order.[13] We agree with the College in part and disagree in part. The Students now plead standing and a basis to proceed on:

- Student Kuelgen's claim relating to campus transportation under Title III;

- Former-Student Richards-Cordell's claim relating to her dietary accommodations under Title III;

- Former-Students Richards-Cordell's and De Camara's breach of contract based on failure to provide dietary accommodations;

- Former-Student De Camara's breach of contract claim relating to academic accommodations, and,

- Former-Student De Camara's and Student Bañuelos's claim for breach of contract based on retaliation.

But we find the Students have not pleaded facts allowing them to proceed on their other proposed amendments requiring we deny leave to add: former-Student De Camara's claim for failure to provide dietary accommodations under Title III; former-Student De Camara's claim for failure to provide psychiatric and counseling services under Title III; Students Kuelgen's and Bañuelos's breach of contract claims based on failure to provide transportation and physical infrastructure accessibility; former-Student Kachru's and Student Bañuelos's breach of contract

3

claims for failure to provide mental health services; and claims for mental anguish contract damages. We also remind the Students we already struck their anonymous student allegations and separate Class Claims.

In sum, the Students may timely file a second amended Complaint including allegations relating to (1) former-Student De Camara's claim for failure to provide virtual attendance accommodation under Title III, (2) former-Student De Camara's and Student Bañuelos's claim for failure to provide testing and course assignment accommodations under Title III, (3) former-Student De Camara's and Student Bañuelos's claim for failure to permit priority registration under Title III, (4) Student Kuelgen's claim for failure to provide transportation accommodations under Title III, (5) former-Student Richards-Cordell's claim for failure to provide dietary accommodations under Title III, (6) former-Students Richards-Cordell's and De Camara's breach of contract claim based on failure to provide dietary accommodations, (7) former-Student De Camara's breach of contract claim for failure to provide academic accommodations, and, (8) former-Student De Camara's and Student Bañuelos's claim for breach of contract based on retaliation.

### A. We grant Student Kuelgen leave to add allegations relating to her Title III claim but deny her leave to add allegations for her breach of contract claim.

Student Kuelgen seeks leave to add allegations relating to her standing to sue for injunctive relief under Title III, her Title III claim for failure to provide transportation accommodations, and her breach of contract claim for failure to provide transportation accommodations.[14] We grant her leave to add allegations confirming her standing to sue and relating to her Title III claim but deny her leave to add allegations relating to her breach of contract claim.

**1. We grant Student Kuelgen leave to add a Title III claim relating to transportation accommodations.**

We dismissed Student Kuelgen's Title III claim for failing to provide her with transportation accommodations because she did not plead facts showing she faced an imminent injury required for standing to sue given she based her allegations on transportation needs during previous recoveries from surgeries.[15] Student Kuelgen now seeks to add allegations showing she faces an imminent injury because she continues to experience pain and require transportation accommodations following her surgeries.[16] Student Kuelgen, at least at this stage, alleges facts sufficient to show her standing to sue because she suggests she has a continuing disability.[17] But the College then argues she still does not state a claim for failure to accommodate under Title III.[18]

Congress requires a student suing for failure to accommodate under Title III must show (1) she "is disabled," (2) the college she is suing is a "public accommodation" under Title III, and (3) the college "unlawfully discriminated against [her] on the basis of [her] disability by (a) failing to make a reasonable modification that was (b) necessary to accommodate [her] disability."[19] The College argues Student Kuelgen has not pleaded facts supporting a failure to accommodate claim because she has not shown she has a disability or she "requested a transportation accommodation" and the College "denied" her request.[20]

The College's first challenge as to pleading a disability does not persuade us because Student Kuelgen pleads facts suggesting she has a disability. A person has a disability under the Act if she (1) has "a physical or mental impairment that substantially limits one or more" of her "major life activities[,]" (2) has "a record of such an impairment[,]" or (3) is "regarded as having such an impairment."[21] We ask whether the person has a condition or injury which "'substantially limit[s]' [her] ability 'to perform a major life activity as compared to most people in the general population.'"[22] Major life activities under the Act include walking.[23] We construe the definition of

disability "in favor of broad coverage of individuals" and "to the maximum extent permitted."[24] For example, our Court of Appeals determined a reasonable jury could find a person disabled where the person temporarily injured his back and testified it hurt "to sit [and] walk," it hurt to "turn[] left or right," and he could not bend or lift certain objects because the person adduced evidence of being substantially limited in performing major life activities—lifting and bending—as compared to most people.[25] Student Kuelgen similarly alleges she experiences so much pain with walking she is sometimes unable to walk to attend her classes.[26] If shown, a jury could find her difficulty walking could be considered a substantial limit on her ability to perform a major life activity. Student Kuelgen pleads facts suggesting she has a disability on an individualized analysis relating to her concerns.

We are also not persuaded by the College's second challenge. The College relies on Judge Leeson's analysis over five years ago in *Mejias v. C&S Wholesale Grocers, Inc.* to argue a person bringing a failure to accommodate claim must allege "(1) the [defendant] knew about the [plaintiff's] disability; (2) the [plaintiff] requested accommodations or assistance for his or her disability; (3) the [defendant] did not make a good faith effort to assist the [plaintiff] in seeking accommodations; and (4) the [plaintiff] could have been reasonably accommodated but for the [defendant's] lack of good faith."[27] But a review of Judge Leeson's analysis five years ago in *Mejias* and our Court of Appeals's analysis over twenty-five years ago in *Taylor v. Phoenixville School District* show this standard applies to claims brought under Title I for failure to accommodate based on a failure to comply with Title I's interactive process requirements.[28] We are aware our Court of Appeals applied this standard thirteen years ago in a nonprecedential Title III failure to accommodate case.[29] But, since then, at least one colleague in our Circuit and

colleagues in other Circuits found Title I's requirement to engage in an interactive process likely does not apply to claims brought under Title III.[30]

Congress through Title III still requires notice regardless of whether the exact Title I interactive process standard applies to Title III failure to accommodate claims. One of the elements for a Title III claim for failure to accommodate requires a person to show the private entity she is suing "unlawfully discriminated against [her] on the basis of [her] disability by (a) failing to make a reasonable modification that was (b) necessary to accommodate [her] disability."[31] A private entity like the College cannot make a reasonable accommodation for a student unless the College knows about the student's disability.[32]

Even though the College is correct it can only be liable under Title III if it knew about Student Kuelgen's need for accommodations, it is incorrect in arguing she has not pleaded she "requested a transportation accommodation for a current disability."[33] Even though Student Kuelgen does not explicitly plead she asked the College's Access Services Department to provide her with transportation accommodations she pleaded facts allowing us to infer she asked the Department for them. She claims her doctor "recommended . . . she receive regular shuttle service," claims she contacted the College's Access Services Department in Summer 2023 before returning to campus, and claims the College "failed to provide the recommended accommodations."[34] Student Kuelgen curiously does not specifically plead notifying the College but we can plausibly infer from her inartful pleading of some notice leading the College to decline the recommended accommodation. We expect discovery will show whether she notified the College as required. But for now, we grant Student Kuelgen leave to amend her Complaint to add her Title III claim for failure to provide transportation accommodations.

**2.  We deny Student Kuelgen leave to add allegations relating to her breach of contract claim based on failure to provide transportation accommodations.**

Student Kuelgen also claims the College breached a contract based on its alleged promise to "provide an adequate transportation system needed to ensure access to academic programs on an equal basis to other students not in need of transportation services."[35] She cites limited materials for this alleged promise: (1) a provision of the student handbook asserting Campus Safety has the responsibility to "promote the safety and welfare of the Bryn Mawr College community," (2) a page from the College's website instructing students to reach out to their Deans, their Professors, or the Department of Athletics for "temporary assistance" after suffering a temporary injury, (3) a handbook provision stating the College will not tolerate "[u]nlawful discrimination," and (4) a provision of the student handbook referring to transportation as a "service[]."[36] She also claims "[o]n information and belief, earlier versions of the [College] website that are not publicly available contain more explicit promises of transportation . . . to students suffering from disabilities."[37] The College argues Student Kuelgen does not, after three attempts, cite specific promises.[38] We agree. We cannot plausibly infer a promise from the pleaded facts.

Promises to "promote . . . safety and welfare" and an environment free from "[u]nlawful discrimination" are aspirational and do not provide "specific and identifiable promises."[39] And the other materials she cites do not include specific promises to provide certain transportation services. Student Kuelgen does not cite to any materials where the College promises to provide a particular type of transportation service. She instead cites to a webpage where the College directs students to resources which can help them manage their temporary injuries and cites to a portion of the handbook describing transportation as a service. Further, she appears to acknowledge the College did "not promise [students] a safe and timely delivery to class."[40] Her assertion earlier versions of the website include more specific promises without more detail is speculative at this stage and not

enough on her third attempt to state a claim. We deny her leave to amend the Complaint to include allegations for a breach of contract based on a failure to provide her with adequate transportation services.

### B.  We grant former-Student Richards-Cordell leave to add allegations relating to their Title III and breach of contract claims.

Former-Student Richards-Cordell seeks leave to add allegations (1) showing standing to sue for injunctive relief under Title III for failure to provide dietary accommodations and (2) relating to their breach of contract claim for failure to provide dietary accommodations.[41] We grant former-Student Richards-Cordell leave to add these allegations.

### 1.  We grant former-Student Richards-Cordell leave to add allegations showing their standing to sue for injunctive relief under Title III relating to dietary accommodations.

We found former-Student Richards-Cordell did not plead their standing to sue for injunctive relief in the amended Complaint. They now seek leave to amend to add their Title III claim relating to dietary accommodations after showing standing by swearing they would return to the College if granted their requested relief.[42] The College argues we should dismiss their Title III claim as futile given a lack of standing because its records show former-Student Richards-Cordell "permanently" withdrew from the College and transferred to the University of North Carolina at Asheville.[43] The College attached records to support a fact challenge to former-Student Richards-Cordell's standing to sue.[44] We disagree with the College and find former-Student Richards-Cordell pleaded facts confirming her standing to sue.[45]

A futility analysis under Rule 15(a)(2) typically requires us to apply the same standard we would apply when considering a Rule 12(b)(6) motion to dismiss.[46] But even the evidence the College produced does not deprive former-Student Richards-Cordell of standing to sue.[47] Even though former-Student Richards-Cordell's Notice of Withdrawal marked withdrawal as

"[p]ermanent," the College did not show former-Student Richards-Cordell could not transfer back to the College after withdrawing.[48] The College instead attaches what appears to be a sample email it sends to withdrawing students explaining "[s]ometimes students want to return to [the College] after having spent some time away" and it has "two re-enrollment cycles: one for students applying to return in the fall semester and one for applying to return in the spring semester."[49] We are not persuaded by the College's standing arguments.

We allow former-Student Richards-Cordell to proceed on a Title III claim relating to dietary accommodations.

**2.  We grant former-Student Richards-Cordell leave to add allegations relating to their breach of contract claim relating to dietary accommodations.**

Former-Student Richards-Cordell also seeks leave to amend their claim for breach of contract based on the College's alleged failure to provide them with dietary accommodations.[50] They claim the College requires "[a]ll resident students . . . to participate in the College meal plan" in its handbook and in exchange promises on its website to provide "[m]eatless, vegan and gluten-free meals . . . at every meal," to handle "[a]llergens . . . with care and proper labeling," and to meet "**every** . . . nutritional need."[51] The College argues (1) statements on its website cannot create a contract and (2) even if the website could form the basis for a contract, the College's assertions on its website are not specific enough.[52]

But specific statements on a College's website can give rise to a contract.[53] And the statements it cites are more than "virtuous aspirations" and are specific enough to suggest the College made an express or implied contract to provide students required to purchase a meal plan with food meeting their nutritional needs.[54] We grant former-Student Richards-Cordell leave to add a breach of contract claim based on not providing them with dietary accommodations.

### C.  We grant former-Student De Camara leave to add allegations relating to her breach of contract claims but not her new Title III claims.

Former-Student De Camara seeks leave to add allegations supporting: (1) a breach of contract claim based on failure to provide dietary accommodations, (2) a breach of contract claim based on failure to provide academic accommodations, (3) a breach of contract claim based on retaliation, (4) a Title III claim based on failure to provide dietary accommodations, and (5) a Title III claim based on failure to provide psychiatric and counseling services.[55] We grant former-Student De Camara leave to add allegations relating to her breach of contract claims for failure to provide dietary accommodations, failure to provide academic accommodations, and retaliation. We deny leave to add allegations relating to her new Title III claims based on failure to provide dietary accommodations and failure to provide psychiatric and counseling services.

#### 1.  We grant former-Student De Camara leave to allege a breach of contract based on not providing dietary accommodations.

Former-Student De Camara seeks leave to amend her claim for breach of contract based on failure to provide dietary accommodations. We grant her leave to amend for the same reasons we grant former-Student Richards-Cordell leave to amend to add their claim for breach of contract based on failure to provide dietary accommodations.

#### 2.  We grant former-Student De Camara leave to allege a breach of contract based on the College not providing academic accommodations.

Former-Student De Camara seeks leave to amend her claim for breach of contract based on failure to provide academic accommodations. She claims two statements in the handbook show the College promised to provide academic accommodations: (1) the College "will not tolerate, condone, or allow discrimination . . .  including on the basis of physical ability" and (2) the College's Access Services Department "provides reasonable accommodations for eligible students

protected under the Americans with Disabilities Act."[56] The College argues this language is discretionary and thus cannot be the basis for a breach of contract claim.[57]

The first statement cannot form the basis for a breach of contract claim because it is "aspirational and non-specific."[58] But the second statement shows the College promised to "provide[] reasonable accommodations" where a student is eligible for them—it does not say the College has discretion to provide accommodations even where a student is eligible.[59] This second statement is specific enough to give rise to a contract. We grant former-Student De Camara leave to amend her Complaint to add her breach of contract claim based on failure to provide academic accommodations.

### 3. We grant former-Student De Camara leave to add allegations relating to her breach of contract claims based on retaliation.

Former-Student De Camara seeks leave to add a claim for breach of contract based on retaliation. Although she claims the College promised not to retaliate "against students for engaging in advocacy activities" the cited portions of the College handbook only show the College could not retaliate "against students who make a good-faith report of a violation of [the College's Anti-Harassment] policy."[60] She also claims the College's website "promises formal process for disputes, not retaliation against students who lodge complaints."[61] The College argues this anti-retaliation statement is aspirational.[62]

We disagree with the College. Its promise not to retaliate against students who report violations in good faith is specific enough to support a breach of contract claim. We grant former-Student De Camara leave to add a breach of contract claim based on retaliation following a "good-faith" report of harassment or discrimination.

**4. We deny former-Student De Camara leave to plead claims for failure to provide dietary accommodations and failure to provide psychiatric and counseling services under Title III.**

Former-Student De Camara asks to add allegations claiming she has a "severe nut allergy" and could not eat food at the College's dining hall because the College "contaminated" it.[63] She also claims the College failed to provide her with on-campus psychiatric treatment.[64] She seeks to bring Title III claims based on both alleged failures.[65] The College again relies on Judge Leeson's analysis in *Mejias v. C&S Wholesale Grocers, Inc.* to argue former-Student De Camara does not state a claim because she did not allege the College "knew of her alleged dietary or psychiatric disabilities or that she ever requested accommodations for those disabilities."[66] As discussed above when addressing Student Kuelgen's Title III claim relating to transportation accommodations, even though Judge Leeson's analysis might not apply to Title III claims, we agree with our colleagues finding an implied notice requirement in Title III. We agree former-Student De Camara has not pleaded facts showing she satisfied this requirement.

Former-Student De Camara does not allege she explicitly notified the College about her disabilities requiring dietary accommodations and an on-campus psychiatrist.[67] And she only alleges facts allowing us to infer she notified the College about her Attention Deficit Hyperactivity Disorder, Dysautonomia, and Post-Concussive Syndrome. She alleges an unnamed person gave her "recommended accommodations" to address these conditions like "priority schedule selection, access to air-conditioned housing, centrally placed housing, housing on the first floor, access to recorded lectures/professors' notes, and extended time on testing and assignments" but the College has been "unable" or "unwilling to provide her with the accommodation[s] needed."[68] She does not allege she reported her need for psychiatric treatment or "un-contaminated food" to the College or allege facts supporting this inference.[69] Even though former-Student De Camara claims the

13

College knew "of the need to provide accommodation to avoid a substantial likelihood of harm to [her] federally protected right[s]" she alleges no facts to support these conclusory allegations.[70]

We deny former-Student De Camara's request to add claims under Title III for failure to provide dietary accommodations and for failure to provide access to psychiatric and counseling services.

### D. We grant Student Bañuelos leave to add allegations relating to her breach of contract claim based on retaliation but deny her leave to add allegations for her remaining breach of contract claims.

Student Bañuelos seeks leave to add allegations relating to a breach of contract claim based on: (1) retaliation; (2) failure to provide physical infrastructure accessibility, and (3) failure to provide mental health services. We grant Student Bañuelos leave to add allegations relating to her breach of contract claim based on retaliation for the same reasons we grant former-Student De Camara leave to add her contract-based retaliation claim. But we deny her leave to add allegations relating to her breach of contract claims based on physical infrastructure accessibility and failure to provide mental health services.

### 1. We deny Student Bañuelos leave to plead a claim for breach of contract based on physical infrastructure accessibility.

Student Bañuelos claims the College promised to "make available accessible entrances to Merion dorm, and Pembroke and Taylor Halls."[71] She cites limited materials for this alleged promise from the student handbook asserting: (1) Campus Safety has the responsibility to "promote the safety and welfare of the Bryn Mawr College community," (2) the College will "provide equal access to all College-sponsored activities and events," and (3) the College will not tolerate "[u]nlawful discrimination."[72] She also claims "[o]n information and belief, earlier versions of the [College] website that are not publicly available contain more explicit promises of

. . . access to students suffering from disabilities."[73] The College argues Student Bañuelos does not, after three attempts, cite specific promises.[74] We agree with the College.

As discussed above, promises to "promote . . . safety and welfare" and an environment free from "[u]nlawful discrimination" are aspirational and do not provide "specific and identifiable promises."[75] And Student Bañuelos does not cite a statement about the College's obligation to provide access to certain buildings on campus and instead cites a provision about providing access to "activities and events." Her assertion earlier versions of the website include more specific promises without more detail is not enough on her third attempt to state a claim. We deny her leave to amend the Complaint to include allegations for a breach of contract based on a failure to provide her with physical infrastructure accessibility.

> **2. We deny Student Bañuelos leave to plead a claim for breach of contract based on failure to provide mental health services.**

Student Bañuelos seeks leave to amend to add a claim for breach of contract based on failure to provide mental health services. She claims the College "promised . . . adequate on-campus psychiatric treatment and medication."[76] She cites a portion of the handbook stating the College provides "psychiatric medication evaluation and management" for its students in support of her claim.[77] The College again argues Student Bañuelos does not, after three attempts, cite a specific promise.[78] We agree with the College. An assertion the College will provide "psychiatric medication evaluation and management" does not amount to a specific promise to provide its students with a full-time medical doctor licensed to prescribe psychiatric medication on campus. We deny her motion to plead a breach of contract claim based on a failure to provide her with mental health services.

### E. We deny Student Kachru leave to add allegations relating to her breach of contract claim based on failure to provide mental health services.

Former-Student Kachru also seeks leave to amend to bring a claim for breach of contract based on failure to provide mental health services.[79] We deny her motion to amend this claim for the same reasons we deny Student Bañuelos's motion to amend to add a claim for breach of contract based on failure to provide mental health services.

### F. We deny the Students leave to plead claims for mental anguish damages arising from their breach of contract claims.

We found ten weeks ago the Students' mental anguish damages are only available for breach of contract claims in limited circumstances.[80] The Students have not alleged facts showing the College's alleged breaches are "wanton or reckless and caused bodily harm" or the College "had reason to know when the contract was made that the breach[es] would cause mental suffering for reasons other than mere pecuniary loss."[81] We dismiss the Students' claim for mental anguish damages for their breach of contract claims. But they may proceed in seeking damages for pain and suffering.

### G. We deny the Students leave to add allegations relating to Jane Doe students and separate "Class Claim[s]" counts.

In addition to denying the Students leave to amend their Complaint to add the above claims we also direct the Students to remove their allegations relating to Jane Doe students and to remove their separate "Class Claim[s]" counts as we required in our September 26, 2025 Order.[82]

### III.    Conclusion

We grant the Students' Motion in part and deny it in part. We proceed into further discovery with varying claims depending on each Student's concern.[83] We grant the Students leave to timely file a second amended Complaint including allegations relating to: (1) former-Student De Camara's claim for failure to provide virtual attendance accommodation under Title III, (2)

16

former-Student De Camara's and Student Bañuelos's claim for failure to provide testing and course assignment accommodations under Title III, (3) former-Student De Camara's and Student Bañuelos's claim for failure to permit priority registration under Title III, (4) Student Kuelgen's claim for failure to provide transportation accommodations under Title III, (5) former-Student Richards-Cordell's claim for failure to provide dietary accommodations under Title III, (6) former-Students Richards-Cordell's and De Camara's breach of contract claim based on failure to provide dietary accommodations, (7) former-Student De Camara's breach of contract claim for failure to provide academic accommodations, (8) former-Student De Camara's and Student Bañuelos's claim for breach of contract based on retaliation.

---

[1] *See* ECF 17. We today refer to the College and its Trustees collectively as the "College."

[2] *See* ECF 21; ECF 22.

[3] *See* ECF 37. The Supreme Court through Federal Rule of Civil Procedure 15(a)(2) instructs us to "freely give leave" to amend a complaint "when justice so requires." Fed. R. Civ. P. 15(a)(2). But we may still deny leave to amend where there is "undue delay, bad faith, dilatory motive, prejudice, [or] futility." *See Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000) (quoting *In re Burlington Coat Factory Secs. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997)). Amending a complaint is futile when the complaint would still "fail to state a claim upon which relief could be granted" even after accepting the amendment. *See id.* (citing *Burlington*, 114 F.3d at 1434). To determine whether amendment is futile we apply the same standards we apply when evaluating a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *See id.* (citing *Burlington*, 114 F.3d at 1434). We thus must take "all pleaded allegations as true and view[] them in a light most favorable to the plaintiff." *See Great W. Mining & Min. Co. v. Fox Rothschild LLP*, 615 F.3d 159, 175 (3d Cir. 2010) (quoting *Winer Fam. Tr. v. Queen*, 503 F.3d 319, 330–31 (3d Cir. 2007))).

[4] *See* ECF 33-1 at 28–35 ¶¶ 85–99. All citations to page numbers are to the CM/ECF pagination.

[5] *See id.* at 17 ¶ 42, *id.* at 40–42 ¶¶ 131–40.

[6] *See id.* at 21 ¶ 56.

---

[7] *See id.* at 23 ¶ 66.

[8] *See, e.g., id.* at 7 ¶ 15 (adding "whims*"); id.* at 8 ¶ 16 (changing phrase to "no meaningful oversight*"); id.* at 10–11 ¶ 20 (adding assertion the College does not "promise a safe and timely delivery to class" with its shuttle bus service*); id.* at 17 ¶ 41 (removing a sentence from paragraph*); id.* at 18 ¶ 43 (changing "exacerbated her condition" to "caused her condition to deteriorate*"); id.* at 22 ¶ 62 (adding allegations about former-Student Kachru*); id.* at 25 ¶ 72, 26 ¶ 77, 27 ¶ 79 (adding allegations Student Bañuelos could not push open doors at Merion Dorm, Pembroke Hall, and Taylor Hall and required an "on-campus prescribing psychiatrist*"); id.* at 36–37 ¶¶ 105–06 (changing language in allegations*); id.* at 37–50 (changing language in remaining claims and requests for relief).

[9] *See* ECF 33-1.

[10] *See id.* at 27–28 ¶¶ 80–84; *id.* at 46–48 ¶¶ 163–74.

[11] *See* ECF 39.

[12] *See id.*

[13] *See id.*

[14] *See* ECF 37; ECF 33.

[15] *See* ECF 21 at 9–10.

[16] *See* ECF 33-1 at 23 ¶ 66 ("[Student] Kuelgen continues to experience physical pain as a result of her surgeries. Walking remains painful and the discomfort continues to interfere with Kuelgen's academic work, and Kuelgen continues to suffer from the lack of an automated means of transportation on campus, so much so that Kuelgen is on occasion unable to attend her classes because the pain of walking from her dorm room to the relevant class is unbearable and there are no alternative means of transportation*"); id.* at 39–40 ¶¶ 124–30.

[17] *Cf. Green v. DGG Props. Co., Inc.*, No. 11-1989, 2013 WL 395484, at *13 (D. Conn. Jan. 31, 2013) (dismissing claim for lack of facts showing likelihood of future injury where hotel patron did not "allege a continuing disability such that it is reasonable to infer that the discriminatory treatment against him will continue").

[18] *See* ECF 39 at 13–15.

[19] *See Matheis v. CSL Plasma, Inc.*, 936 F.3d 171, 175 (3d Cir. 2019) (citations omitted); *see also Hershman v. Muhlenberg Coll.*, 17 F. Supp. 3d 454, 457 (E.D. Pa. 2014) ("A student alleging that his college failed to accommodate his disability as required by Title III of the ADA must establish '(1) that the plaintiff is disabled and otherwise qualified academically, (2) that the defendant is a private entity that owns, leases or operates a place of public accommodation (for ADA purposes) . . . , and (3) that the defendant failed to make reasonable modifications that would accommodate

the plaintiff's disability without fundamentally altering the nature of the public accommodation'" (quoting *Schneider v. Shah*, 507 F. App'x 132, 137 (3d Cir. 2012)).

[20] *See* ECF 39 at 15.

[21] *See* 42 U.S.C. § 12102(1).

[22] *See Morgan v. Allison Crane & Rigging LLC*, 114 F.4th 214, 222 (3d Cir. 2024) (first quoting 42 U.S.C. § 12102(1)(A); and then quoting 29 C.F.R. § 1630.2(j)(1)(ii)).

[23] *See* 42 U.S.C. § 12102(2)(A)–(B) (listing major life activities like "caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working" and including "the operation of a major bodily function").

[24] *See* 42 U.S.C. § 12102(4)(A).

[25] *See Morgan*, 114 F.4th at 222–23.

[26] *See* ECF 33-1 at 23 ¶ 66.

[27] *See* ECF 39 at 14 (quoting *Mejias v. C&S Wholesale Grocers, Inc.*, No. 20-1435, 2020 WL 3971021, at *4 (E.D. Pa. July 14, 2020) (quoting *Taylor v. Phoenixville Sch. Dist.*, 184 F.3d 296, 311–12 (3d Cir. 1999))).

[28] *See Mejias*, 2020 WL 3971021, at *4 (mentioning requirement to engage in an interactive process before giving standard); *Taylor*, 184 F.3d at 319–20 (showing the standard is for claims "an employer failed to participate in the interactive process").

[29] *See Schneider*, 507 F. App'x at 138 (applying Title I's interactive process standard in a Title III case).

[30] *See Douglass v. 360Sweater Co., LLC*, No. 22-0936, 2022 WL 4386635, at *2–4 (W.D. Pa. Sept. 22, 2022) ("[T]his Court notes that neither the ADA itself, nor the Supreme Court of the United States and/or the United States [] Court of Appeals for the Third Circuit, have concluded that the interactive process leading to the determination of a reasonable accommodation is required under Title III of the ADA, relating to public accommodations. As such, this Court declines to apply the interactive process/reasonable accommodation provision of Title I to this case, which is a Title III ADA case"); *Tauscher v. Phx. Bd. of Realtors, Inc.*, 931 F.3d 959, 964 (9th Cir. 2019) (citing 42 U.S.C. §§ 12181—12189) ("The ADA does not make [Title I's] 'interactive process' requirement applicable to public accommodations and services . . . . Title III and its implementing regulations make no mention of an 'interactive process' that mirrors the process required in the employment context"); *LaBonte v. Riverside Park Enters., Inc.*, No. 22-30046, 2022 WL 17253663, at *4 (D. Mass. Nov. 28, 2022) (collecting cases like *Douglass* and *Tauscher* and observing "[t]here is authority from other jurisdictions" suggesting "the good faith interactive process that applies in ADA Title I employment cases" does not "extend[] to Title III public accommodation cases").

[31] *See Matheis*, 936 F.3d at 175.

[32] *Cf. Schneider*, 507 F. App'x at 137–38 (seeming to reject student's argument she could sue school for failure to provide reasonable accommodations during a period when she did not notify the school she had a disability and applying Title I's interactive process standard requiring knowledge of disability); *Lopez v. Pec*, No. 23-23012, 2025 WL 25560, at *16 (D.N.J. Jan. 3, 2025) (dismissing tenants' Title III failure to accommodate claim in part because the tenants did not "allege what disability or disabilities they have that entitle them to accommodations under the [Act], whether the [landlord] knew about their disabilities, nor how the [landlord] purportedly denied their requests for accommodations"); *Mullen v. DSW Dev. Corp.*, No, 23-518, 2024 WL 5166775, at *1–2 (W.D. Pa. Dec. 19, 2024) (denying motion to dismiss where defendant argued hotel patron failed to state a claim because he did "not allege [he] notified the hotel of his disability or need for an accommodation" because the hotel patron alleged "sufficient facts to raise a reasonable expectation that discovery will reveal evidence of the notice element of [his] Title III accommodation claim"); *Anderson v. First Premier Bank*, No. 25-5502, 2025 WL 3214776, at *3 (E.D. Pa. Nov. 17, 2025) (observing plaintiff failed to plead "whether and how she asked the Defendants to accommodate her disability"); *see also J.V. v. Albuquerque Pub. Schs.*, 813 F.3d 1289, 1299 (10th Cir. 2016) (noting in Title II context "[a] public entity must provide a reasonable accommodation under the [Act] when it knows that the individual is disabled and 'requires an accommodation of some kind to participate in or receive the benefits of its services'" and "[a] public entity is on notice that an individual needs an accommodation when it knows that an individual requires one, either because that need is obvious or because the individual requests an accommodation" (quoting *Robertson v. Las Animas Cnty. Sheriff's Dep't*, 500 F.3d 1185, 1195 (10th Cir. 2007))); *Adams v. The Vanderbilt Univ.*, No. 23-00001, 2024 WL 1182861, at *19 (M.D. Tenn. Mar. 19, 2024) (citing *Kleiber v. Honda of Am. Mfg., Inc.*, 485 F.3d 862 (6th Cir. 2007) (stating "[a] plaintiff seeking to establish discrimination based on a failure-to-accommodate theory [under Title III] must show that he or she made a request for reasonable accommodation that the defendant denied" and acknowledging most of the caselaw requiring requests for accommodations "comes from Title II cases" but the requirement still "applies in Title III cases").

[33] *See* ECF 39 at 15.

[34] *See* ECF 33-1 at 22–23 ¶¶ 63–64.

[35] *See id.* at 43 ¶¶ 148–149.

[36] *See id.* at 31–32 ¶¶ 95–96.

[37] *See id.* at 32 ¶ 96.

[38] *See* ECF 39 at 18–19.

[39] *See Canaan v. Carnegie Mellon Univ.*, 760 F. Supp. 3d 306, 334–36 (W.D. Pa. 2024) (finding a university's "Statement of Assurance" asserting it "does not discriminate on the basis of . . . national origin, religion, or ancestry" is too "aspirational and non-specific . . . [to] support a breach of contract claim").

[40] *See id.* at 10–11 ¶ 20.

[41] *See* ECF 37; ECF 33.

[42] *See* ECF 21 at 7–9; ECF 33-1 at 21 ¶ 56 (swearing they "would gladly return to [the College] if the dietary issues she encountered at the College were satisfactorily addressed*"); id.* at 40–41 ¶¶ 131–35.

[43] *See* ECF 39 at 13.

[44] *See id.*; ECF 39-1; ECF 39-2; ECF 39-3; ECF 39-4.

[45] *Cf. Giterman v. Pocono Med. Ctr.*, 361 F. Supp. 3d 392, 405–06 (M.D. Pa. 2019) (explaining both tests to show standing to sue for injunctive relief under Title III require "an intent to return to the place of alleged discrimination" (quoting *Hollinger v. Reading Health Sys.*, No. 15-5249, 2017 WL 429804, at *4 (E.D. Pa. Jan. 31, 2017))).

[46] *See Great W. Mining & Min. Co.*, 615 F.3d at 175 (explaining "[t]he standard for assessing futility is the 'same standard of legal sufficiency as applies under [Rule] 12(b)(6)'" and requires us to take "all pleaded allegations as true and view[] them in a light most favorable to the plaintiff" (first quoting *Shane*, 213 F.3d at 115; and then quoting *Winer Fam. Tr.*, 503 F.3d at 330–31)).

[47] *Cf. Wayne Land & Min. Grp., LLC v. Del. River Basin Comm'n*, 959 F.3d 569, 574 (3d Cir. 2020) ("[O]ur continuing obligation to assure that we have jurisdiction requires that we raise [the] issue[] of standing . . . sua sponte" (quoting *Seneca Res. Corp. v. Twp. of Highland*, 863 F.3d 245, 252 (3d Cir. 2017))).

[48] *See* ECF 39-2 at 3.

[49] *See id.* at 5.

[50] *See* ECF 37; ECF 33.

[51] *See* ECF 33-1 at 30 ¶¶ 90–92 (emphasis added).

[52] *See* ECF 39 at 17–18.

[53] *See Hickey v. Univ. of Pittsburgh*, 81 F.4th 301, 312–14 (3d Cir. 2023) (considering "university publications" like a website in part to find students pleaded an implied contract to provide in-person education); *see also Ninivaggi v. Univ. of Del.*, 555 F. Supp. 3d 44, 51 (D. Del. 2021) (Bibas, J., sitting by designation) (noting a university "touts [an] on-campus experience on its website, in its admissions letters, and during admitted students' day" and observing these statements coupled with "history, custom, and course of dealing . . . created an implied promise of in-person classes"); *Figueroa v. Point Park Univ.*, 553 F. Supp. 3d 259, 268 (W.D. Pa. 2021) (noting we can look to materials like websites while assessing breach of contract claims against a university (citing *McCabe v. Marywood Univ.*, 166 A.3d 1257, 1261 (Pa. Super. Ct. 2017))).

[54] *See, e.g.*, *Canaan*, 760 F. Supp. 3d at 335 ("[T]he Policy Against Retaliation is not merely aspirational; rather, this policy promises that [the University's] faculty, staff, and students who violate the policy will be subject to appropriate disciplinary action, and a reasonable inference from Ms. Canaan's complaint is that Professor Issaias, among others, was never subject to disciplinary action for his retaliation"); *Landau v. Corp. of Haverford Coll.*, 789 F. Supp. 3d 401, 430 (E.D. Pa. 2025) (finding a college's promise to "conduct a thorough inquiry and address all reports of bias incidents of which it becomes aware" is specific enough to support a breach of contract claim).

[55] *See* ECF 37; ECF 33.

[56] ECF 33-1 at 29–30 ¶¶ 88–89.

[57] ECF 39 at 19–20.

[58] *See Canaan*, 760 F. Supp. 3d at 334–36 (finding a university's "Statement of Assurance" asserting it "does not discriminate on the basis of . . . national origin, religion, or ancestry" is too "aspirational and non-specific . . . [to] support a breach of contract claim").

[59] *See* ECF 33-1 at 29–30 ¶¶ 88–89.

[60] *See* ECF 33-1 at 46 ¶ 161; *id.* at 34–35 ¶ 99.

[61] *See id.* at 34 ¶ 99; Disclosure, Confidentiality, Appeals and Complaints, Bryn Mawr College, https://www.brynmawr.edu/inside/offices-services/access-services/students/disclosure-confidentiality-appeals-complaints [https://perma.cc/49NY-6EBN] (describing the "Appeals Process" where "a disagreement arises concerning requested accommodations" and the "Equal Opportunity Complaint Resolution Procedure").

[62] *See* ECF 39 at 21–22.

[63] *See* ECF 33-1 at 17–18 ¶ 42.

[64] *See id.*

[65] *See id.* at 40–42 ¶¶ 131–40.

[66] *See* ECF 39 at 15 (citing *Mejias*, 2020 WL 3971021, at *4).

[67] *See* ECF 33-1 at 15–18 ¶¶ 35–44.

[68] *See id.* at 15 ¶¶ 35, 37–38.

[69] *See id.* at 17–18 ¶ 42.

[70] *See id.* at 40–41 ¶¶ 133–4; *id.* at 41 ¶¶ 138–39.

[71] *See id.* at 43 ¶ 149.

[72] *See id.* at 31–32 ¶¶ 95–96.

[73] *See id.* at 32 ¶ 96.

[74] *See* ECF 39 at 18–19.

[75] *See Canaan*, 760 F. Supp. 3d at 334–36 (finding a university's "Statement of Assurance" asserting it "does not discriminate on the basis of . . . national origin, religion, or ancestry" is too "aspirational and non-specific . . . [to] support a breach of contract claim").

[76] *See* ECF 33-1 at 45 ¶ 157.

[77] *See id.* at 32–33 ¶ 97.

[78] *See* ECF 39 at 20–21.

[79] *See* ECF 37; ECF 33.

[80] *See* ECF 21 at 34 n.131.

[81] *See MDB v. Punxsutawney Christian Sch.*, 386 F. Supp. 3d 565, 591 (W.D. Pa. 2019) (quoting *Emerman v. Baldwin*, 142 A.2d 440, 447 (Pa. Super. Ct. 1958)).

[82] *See* ECF 21; ECF 22.

[83] We expect experienced counsel will cooperate to manage discovery with these differing claims, and for us to thoughtfully evaluate, both the common and distinct claims after discovery.